**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CORNELIUS CALDWELL,

    Plaintiff,

v.                                                            Case No: 8:14-cv-2167-T-30AEP

CHRIS NOCCO and GENE SMITH,

    Defendants.

## ORDER

In this action alleging violations of state and federal civil rights, Plaintiff Cornelius Caldwell claims that he was unlawfully arrested on suspicion of driving under the influence (DUI). Before the Court is Defendants' Motion for Summary Judgment (Dkt. 23) and Plaintiff's Response in Opposition (Dkt. 30). The Court has reviewed the pleadings, depositions, record evidence, and the relevant law and concludes that the motion should be granted in part and denied in part.

### FACTUAL BACKGROUND

On the evening of Saturday, April 6, 2013, Caldwell and two friends, Stinyard and Solar, went to a party at the home of an acquaintance. (Caldwell Dep., p. 20). There, Stinyard and Solar, the parties agree, both drank alcohol. (Id. at 29). All three stayed at the party till approximately 5:00 AM on Sunday April 7, though Caldwell slept for a few hours in an upstairs bedroom. (Id. at 20). When they left, the three friends first took a fourth friend home and then drove toward Dade City, where they planned to go fishing. At just

after 6:00 AM, Caldwell was driving the three on Route 301 as they approached a small hill. (Id. at 32-33). Pasco County Sheriff's Deputy Gene Smith, meanwhile, was in his patrol car, in the median, just over that hill. (Id. at 33).

Deputy Smith has been in law enforcement, in Michigan and in Florida, since 1995, with a few breaks for military service and other employment. (Smith Dep., p. 9, 15, 25). He began working for the Pasco County Sheriff's Office in 2009. In 2011 he was chosen for the Selective Traffic Enforcement Program (STEP), a police unit that undergoes advanced training and specializes in DUI and drug enforcement. (Id. at 59). As part of that unit, Smith attended Advanced Roadside Impairment Detection training (ARID), where attendees learn about various drugs and the effects they have on people who are under the influence of them. (Id. at 78-79). For most of his career Smith has been in traffic enforcement, during which time he has made more than 300 DUI arrests. (Id. at 42).

When Caldwell drove over the hill on Route 301, he was speeding, and Smith initiated a traffic stop. (Caldwell Dep., p. 33). Beyond this, the parties dispute most of the facts surrounding the traffic stop. In fact, the disputes begin before the stop occurred. Caldwell, for example, believed that he was travelling 60 miles per hour in a 55 mph zone. Smith, according to his deposition testimony and arrest affidavit, clocked Caldwell on radar at 65 mph. Upon seeing Smith's patrol car, Caldwell testified that he slowed to 55 mph; Smith testified that he slammed his brakes and dropped to 30 mph. (Caldwell Dep., p. 34; Smith Dep., p. 90).[1] Smith testified that Caldwell was slow to pull over. (Smith Dep., p.

---

[1] The lawfulness of the initial traffic stop is not in dispute.

101). Caldwell, on the other hand, testified that Smith did not initiate the stop until Caldwell had traveled miles past his patrol car. (Caldwell Dep., p. 35-36).

When Smith approached the car he did not smell alcohol or drugs, but nonetheless suspected that Caldwell was under the influence of drugs. Smith testified, "[Caldwell's] pupils were the size of flying saucers" and they did not respond to Smith's flashlight. (Smith Dep., p. 102). Smith further testified that he greeted Caldwell politely, introduced himself, and upon seeing Caldwell react slowly to light, asked if he had had any drinks that night. In response, Caldwell looked "lethargic, kind of dazed, out there, out of it" and admitted to having had a few drinks. (Id. at 101; 105).

Caldwell recounts their exchange differently. "He was very aggressive," Caldwell testified. "He told me to put my hands up—or, all of [our hands] where he could see them." (Caldwell Dep., p. 37). According to Caldwell, he does not drink or do drugs, and he told Smith that he had not consumed alcohol that evening. (Id. at 38). Caldwell testified that, at all times during the traffic stop, he was awake and alert. (Id. at 45).

Smith called for backup, and three officers soon arrived on scene. (Smith Dep., p. 112). Smith then had Caldwell perform roadside sobriety tests. They offer differing accounts of how Caldwell performed. According to Smith, Caldwell failed the Walk and Turn, the One Leg Stand, and the Finger to Nose tests. (Dkt. 30-3). Caldwell recalls the Walk and Turn and the One Leg Stand, and also recalls being told to spell the alphabet forwards and backwards. (Smith Dep., p. 43-44). Aside from the backwards-alphabet test, which Caldwell considered an unreasonable test, he testified that he passed the tests, that he "walked that line perfectly." (Caldwell Dep., p. 45). Caldwell and his passenger Stinyard

3

also testified that Stinyard tried to video record the encounter and Caldwell's performance on the field sobriety tests, but that he stopped when Smith threatened him with arrest. (Caldwell Dep., p. 51; Stinyard Dep., p. 24). Smith does not recall anyone ever trying to record their encounter.

After the field sobriety tests were completed, Smith arrested Caldwell on suspicion of DUI. The parties also agree that Smith conducted the investigation alone and that the other officers merely provided backup and paid little attention to the interactions between Smith and Caldwell.

Although not necessary to resolve this motion, a few additional, undisputed facts provide helpful context. At the station, Caldwell took a breathalyzer test which returned a reading of 0.00. (Dkt. 30-1). Caldwell also provided a urine sample. His first attempt to provide urine failed, however, because he dropped the specimen cup into the toilet. (Caldwell Dep., p. 57). Smith gave him a second cup, warned him not to drop it again, and observed Caldwell supply a sample. (Id. at 58). Caldwell was then sent to a holding cell, where he remained until his release later that day. (Caldwell Dep., Ex. 2).

Caldwell's urine specimen was tested at a Tallahassee lab of the Florida Department of Law Enforcement (FDLE) on April 26, 2013. The test did not detect the presence of any drugs, though at the time the FDLE did not test for bath salts or synthetic marijuana. (Higgingbottom Dep., p. 6, Ex. A). Physical searches of Caldwell and his car likewise failed to find any evidence of drug use. The criminal case against Caldwell for DUI was later reduced by the State Attorney's Office to a traffic citation for careless driving. (Smith Dep., p. 142).

## DISCUSSION

Caldwell's lawsuit has three counts. Count I is a state law claim for false arrest against the sheriff of Pasco County, Chris Nocco, in his official capacity and on a theory of vicarious liability. Count II is a state law claim for false arrest against Smith in his individual capacity. And Count III is also a claim for false arrest against Smith in his individual capacity, but under federal law, 42 U.S.C. § 1983.

Nocco and Smith move for summary judgment on all counts. The Court will discuss each count below, in reverse order, and grant the motion only on Count II.

### Summary Judgment Standard

A motion for summary judgment forces a court to "pierce the pleadings and [] assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Motions for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue over any material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; rather, the record must reveal a "*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original). Facts are material if, under the applicable substantive law, they might affect the outcome of the case. *See id*. And disputes over those facts are genuine

"if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

If the moving party meets its burden, non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Conclusory allegations will not suffice. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Neither will "a mere scintilla of evidence supporting" the non-movant's claims. *Walker v. Darby*, 911 F.2d 1573, 1577 (1th Cir. 1990) (internal quotations omitted). The non-movant must instead present facts that are significantly probative to support those claims. *Anderson*, 477 U.S. at 248-49 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968) (requiring that "sufficient evidence supporting the claimed factual dispute be shown to [defeat the motion and] require a jury or judge to resolve the parties' differing versions of the truth")).

This Court may not decide a genuine dispute over a material fact at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). If any such dispute exists, "the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

And throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**Federal False Arrest Claim**

A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a federal 1983 claim. *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). The existence of probable cause defeats the claim and entitles the arresting officer to summary judgment. *Miller v. Harget*, 458 F.3d 1251, 1261 (11th Cir. 2006). Probable cause exists when "the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Williamson v. Mills*, 65 F. 3d 155, 158 (11th Cir. 1995)).

All federal courts also recognize the "inevitab[ility] that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present," *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987), and that, in such cases, officers should not be held personally liable for their mistakes. *Id.* Qualified immunity thus extends to arrests based on "arguable probable cause," which is met if a reasonable officer "could have believed under the totality of the circumstances that probable cause existed to arrest." *Brienza v. Gee*, 307 Fed. Appx. 352, 353, 2009 WL 80261, *1 (11th Cir. 2009) (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)). To establish a constitutional violation in a 1983 false arrest claim, a plaintiff

must prove that the officer arrested him without at least arguable probable cause. *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008). If undisputed facts establish that the plaintiff cannot meet this burden, summary judgment in favor of the arresting officer is warranted. *See e.g.*, *Moran v. Cameron*, 362 Fed. Appx. 88, 94, 2010 WL 200834, *6 (11th Cir. 2010).

Here, Smith and Caldwell present widely divergent accounts of the early morning of August 7, 2013. Smith says that Caldwell admitted to drinking the previous evening. Caldwell says that he never drinks and told Smith as much. Smith says the Caldwell's eyes looked disoriented, "like flying saucers." Caldwell says that he is an early riser by nature, and that he was awake and alert when he was pulled over. Smith says that Caldwell failed roadside sobriety tests. Caldwell says that he passed. The only undisputed fact, that Caldwell was speeding, does not establish probable cause or arguable probable cause to arrest him for DUI. *See Strickland v. City of Dothan, AL*, 399 F. Supp. 2d 1275, 1287 (M.D. Ala. 2005).

Both Caldwell and Smith point to facts that occurred after the arrest to raise the inference that the other's version of the relevant facts—that is, those occurring before the arrest—are not credible. Caldwell points to the fact that his urine test came back negative and that no evidence of drugs was found on him or in his car. Smith, meanwhile, points to Caldwell's having first dropped his urine specimen cup into the toilet—the suggestion there being that Caldwell may have been trying to mask his urine. These facts are irrelevant to the Court's inquiry. *See Brienza*, 307 Fed. Appx. at 353 (emphasizing that the analysis must focus on "the facts and circumstances present at the time of the arrest").

The Court must construe the facts in Caldwell's favor at this stage of the case, and under his version of the facts, neither probable cause nor arguable probable cause existed at the time he was arrested. On Count III, Caldwell's federal 1983 claim, summary judgment will be denied.

**State Claim Against Deputy Smith in His Personal Capacity**

Caldwell's state law claim against Smith for false arrest, however, must fail, as explained below. But first a point of clarification. Caldwell's complaint refers to both "false arrest" and "false imprisonment." According to the Florida Supreme Court, they refer to the same tort, and this Court, like most others, will call it false arrest. *See Johnson v. Weiner*, 19 So. 2d 699, 700 (Fla. 1944); *see e.g.*, *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1177 (Fla. 1st DCA 2003).

False arrest is defined in Florida as "the unlawful restraint of a person against that person's will." *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) (citing *Johnson*, 19 So. 2d at 699). Like it does in 1983 actions, the existence of probable cause or arguable probable cause defeats a Florida false arrest claim. *Fernander v. Bonis*, 947 So. 2d 584, 588 (Fla. 4th DCA 2007). One distinction is that, in this context, Florida defines arguable probable cause as an affirmative defense, which means the defendant bears the burden of proving it. *See City of St. Petersburg v. Austrino*, 898 So. 2d 955, 957 (Fla. 2d DCA 2005).

In cases in which an officer fails to prove arguable probable cause, he may still be immune from personal liability:

9

> No officer, employee or agent of the state . . . shall be held personally liable in tort . . . in any action for any injury or damages suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Immunity provided by this section of the Florida statutes is both an immunity from liability and from suit. *Willingham*, 929 So. 2d at 48. It is lost if the defendant claiming it is required to go to trial, so courts are called to be gatekeepers that should ask at summary judgment "whether a reasonable trier of fact could possibly conclude that the conduct was willful and wanton, or would otherwise fall within the exceptions to the statute." *Id.*

Although the Court cannot conclude on the disputed facts of this case that Smith had arguable probable cause to arrest Caldwell, Florida's immunity statute controls Count II of Caldwell's complaint, which is a claim against Smith in his personal capacity. The statute compels the Court to grant summary judgment.

Caldwell's complaint and his response to Defendants' summary judgment motion fail to allege facts that bring Smith's actions within the statute's immunity exceptions. Indeed, even if they had, the undisputed facts would refute that claim. Smith, the parties agree, was acting within the scope of his employment when he pulled over and arrested Caldwell. Aside from the brief period when Smith first approached his car, which Caldwell labeled "aggressive," Caldwell's deposition testimony describes a professional and at times even cordial interaction. He called Smith "pretty nice" and "very pleasant" and recalls

10

being sarcastic with Smith "because he was being friendly with me all the time." (Caldwell Dep., p. 53-54).

Even when viewed in the light most favorable to Caldwell, Smith's conduct falls far short of the kind contemplated by the Florida statute. *Compare Parker v. State Bd. Of Regents ex rel. Florida State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998) ("bad faith" requires actual malice); and *Jarzynka v. St. Thomas University of Law*, 310 F. Supp. 2d 1256, (S.D. Fla. 2004) ("Malice, in this context, is best understood as a wrongful act, done intentionally, without just cause or excuse.") (internal quotations omitted); *with Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1225 (M.D. Fla. 2011) (denying summary judgment and concluding that strip search not authorized by warrant or any other circumstances raised question as to whether search exhibited a wanton and willful disregard of human rights). On this record, no reasonable juror could conclude that Smith's conduct exhibited bad faith, or actual malice, or a wanton disregard for Caldwell's rights. *See Willingham*, 929 So. 2d at 48. Summary judgment on Count II will be granted.

**State Claim Against Sheriff Nocco in His Official Capacity**

In circumstances where, as here, personal liability is foreclosed by Florida's immunity statute, a remedy remains available against the agency itself, or its representatives in their official capacities. *See* Fla. Stat. § 768.28(9)(a). The immunity statute, in other words, presents an either-or right to relief: either against the individual in the case of conduct exhibiting bad faith, malice, or a wanton disregard for rights; or against the governmental entity ("or the head of such entity in her or his official capacity") for all other torts recognized by the act. *Id.*

11

False arrest is one such tort. *See Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1196 (M.D. Fla. 2008); *Fernander*, 947 So. 2d at 589. For the reasons discussed above, the Court cannot conclude, at this stage, that Smith arrested Caldwell with arguable probable cause. But for reasons also discussed above, the Court has concluded that Smith's actions were within the scope of his employment and done without bad faith, malice, or a wanton disregard for rights. Together these conclusions demand that the Court deny summary judgment on Count I. If Smith's arrest of Caldwell was unlawful, Sheriff Nocco would be liable under a theory of vicarious liability. *See* Fla. Stat. § 30.07; *Dep't of Children & Family Servs. v. Chapman*, 9 So.3d 676, 680 (Fla. 2d DCA 2009) (citing *Mendez v. Blackburn*, 226 So.2d 340, 342-43 (Fla. 1969).

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motion for Summary Judgment (Dkt. 23) is GRANTED in part and DENIED in part.

2. Summary Judgment is GRANTED on Count II, the state law claim against Smith for false arrest.

3. On Counts I and III, summary judgment is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 22nd day of December, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record